**UNITED STATES DISTRICT COURT FOR THE**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JOHNNY L. GEE AND** | § | **CIVIL ACTION NO:** |
| **TIANA GEE** | § | |
| | § | **8:20-cv-01689** |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THOR MOTOR COACH, INC.** | § | |
| **MIKE THOMPSON RECREATIONAL** | § | |
| **VEHICLES AND** | § | |
| **HUNTINGTON NATIONAL BANK** | § | |
| | § | |
| *Defendants* | § | **JURY TRIAL REQUESTED** |

## COMPLAINT

### I.    Parties

1.    Plaintiffs, JOHNNY L. GEE and TIANA GEE, are individuals that are now and have been at all times a citizens of the State of California.

2.    Defendant, THOR MOTOR COACH, INC., hereinafter "THOR,"is an Indiana corporation authorized to do and doing business in the State of Indiana with its principal place of business located at 900 CR 1, PO Box 3030, Elkhart, in, 46515, USA and is a citizen of the State of California and a warrantor of a Recreational Vehicle that Plaintiffs purchased and is a merchant in goods of the kind  involved in this case.

THOR agent for service of process is C T Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, TX 75201-4234.

3.    Defendant, MIKE THOMPSON RECREATIONAL VEHICLES, hereinafter "MIKE THOMPSON RV SUPERSTORES," is a California corporation  authorized to do and doing

-1-

business in the State of California.

MIKE THOMPSON RV SUPERSTORES's agent for service of process is Frank De Galas, 13940 Firestone Boulevard, Santa Fe Springs, California 90670.

4.      Defendant, HUNTINGTON NATIONAL BANK, hereinafter "HUNTINGTON NATIONAL BANK," is an Ohio financial institution authorized to do and doing business in the State of California whose may be served at Huntington National Bank, 17 South High Street, Columbus, Ohio 43216.

## II.      Jurisdiction

5.      This court has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III.      Venue

6.      Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV.      Conditions Precedent

7.      All conditions precedents have been performed or have occurred.

## V.   Facts

### A.   The Transaction

8.      On or about March 14, 2020, Plaintiffs purchased a new 2019 THOR PALAZZO bearing VIN 4UZACJFC2KCKX4400, hereinafter "PALAZZO," from MIKE THOMPSON RV SUPERSTORES.

The "PALAZZO" was purchased primarily for Plaintiffs' personal use.  The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

9.      The sales price of the PALAZZO was $158,448.00.  Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law.  See ***Hughes v. Segal Enterprises, Inc.***, **627 F. Supp. 1231, 1238 (W.D. Ark. 1986); *Chariton Vet Supply, Inc. v. Moberly Motors Co.*, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

10.     The contract of sale was assigned to Defendant, HUNTINGTON NATIONAL BANK.  The contract which was assigned contained the following provision:

> **"NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."**

### B.   Implied Warranties

11.     As a result of the sale of the PALAZZO by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the PALAZZO

would pass without objection in the trade under the contract description, and that the PALAZZO was fit for the ordinary purpose for which such motor vehicles are purchased.

12.     Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants.  Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.     Express Warranties

13.     In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the PALAZZO, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the PALAZZO had, in fact, repaired the defects.

14.     Plaintiffs' purchase of the PALAZZO was  accompanied by express warranties offered by the Defendants, THOR and MIKE THOMPSON RV SUPERSTORES, and extending to Plaintiffs.  These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase of the PALAZZO.

15.     The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship.  Any required adjustments would also be made during the basic coverage period.  All warranty repairs and adjustments, including parts and labor, were to be made at no charge.  Additional warranties were set forth in the THOR's warranty booklet and owners manual.  Also, the Defendant, THOR, continued to agree to extended its express warranty with the Plaintiffs to cover defects that were discovered and tendered for repairs during the original factory warranty.

### D.   Actionable Conduct

16.     In fact, when delivered, the PALAZZO was defective in materials and workmanship, with such defects being discovered within the warranty periods.  Many defective conditions have occurred since purchase, including, but not limited to, the following in the Plaintiffs's own words:

**"7/7/20**

**I have written an itemized list of concerns with my 2019 Palazzo 36.1 Coach and overall experience with the Santa Fe Springs Mike Thompson RV Service Center.**

**To start I'd like to provide a back-story to paint the picture of our experiences as a first time RV owner. My family purchased the new coach on Sunday 3/15/2020 from the Fountain Valley Mike Thompson RV store during the 2020 Spring Sale – the coach was actually from the Santa Fe Springs store and delivery was completed 6 days later on Saturday 3/21/20 at Santa Fe Springs and a complete walk-thru was done with Nick (orientation person).**

**Within 1 month, 1 trip and <500 miles, we were back to the Santa Fe Springs Mike Thompson RV Service Center for miscellaneous repairs/servicing of basic safety, mechanical and design items not properly working or causing concern.**

**The coach was in the Santa Fe Springs Mike Thompson RV Service Center's custody from 4/13/2020-6/26/2020.**

**The items requested for inspection and repair were as follows:**

**1.     Vinyl Flooring raising up from sub-floor when heater was in operation (entire floor, from rear bath thru living space) …. still same problem after new floor installed.**

**2.      Cargo Door (main cargo space) left, interior latching, door flew off while driving and same cargo space was filling up with water- not properly sealed……repaired to our satisfaction.**

**3.     Interior speakers (behind passenger seat blown, bedroom**

speaker fell out of ceiling) …. repaired to our satisfaction.

4.      Exterior Entertainment space was not properly sealed and Bluetooth speaker got water damaged and no longer worked….repaired and seal tested to our satisfaction.

5.      AC issues (coach).... not addressed, 7/3/20 still seeing intermittent issues with consistent operations- example: temp in coach 97 degrees, thermostat turned on- set to 73 degrees...both units running 2 hours and coach temp decreased  only 6 degrees to 91 degrees.

6.      AC issues (driver ac) …not addressed, 7/3/20 still seeing intermittent issues with consistent operations- blows only hot air for more than 30 minutes- we turned off, then turned back on 1hr 1/2 later (randomly just for air movement) and now it blows cold...Carlton says this has to be repaired by Freightliner. Why not blowing cold?

7.      Water tank level always reads 67… I was told this was common and they said a hole cut in the tank cover would allow us to verify when full. We were more less satisfied with this "work around".

8.      Propane not reading on display panel…repaired, proper readings appear satisfactory.

9.      Jack lights blinking non-stop when powered on…. 7/3, this problem still exists.

10.     Right rear wheel well molding separated from coach…this was sub-par repaired by silicone that was goopy and is already peeling off.

11.     Generator Service…this was completed to our satisfaction and cost was split with Mark from sales department, much to our appreciation.

12.     Passenger side mirror damaged by Buyer needed replacement… we paid for this on 6/26 upon service visit pickup and per discussion with Carlton the mirror would be painted and installed when we return to finish the floor.

13.     **Temperature of engine fluctuates between ¼ - ¾ degrees while driving…Carlton says this has to be serviced by Freightliner.**

At my initial service center drop off on 4/13, I was told by Carlton that only 5 items were allowed to be addressed at one service visit. We appreciated the extra items being looked at over the 3 months the coach was in the service center's custody. We personally confirmed with Thor that they approved/warrantied all above requests (floor, cargo door, exterior Bluetooth speaker, etc.) within 24 hours of dealership request. It was recommended by Carlton to call Thor directly for our own peace of mind. We also ordered after-market Konni shocks (recommended by Carlton) that was completed during the service visit and to our satisfaction. We appreciated that recommendation and saw immediate improvement to the coach's drivability, comfort and handling.

During the 3 months my coach was at the service center, I called countless times, many times with no answer and no returned calls after leaving voicemails. I even made a few visits to check on my coach and the repairs taking place since it didn't appear I was being informed of what was actually happening; after all, it had been MONTHS and my concern was growing- I was losing confidence in when my coach would be ready for pick up, if ever.

At one site visit, on 6/15/20, a discussion was had with the service center staff about the delays in repairs and if we should cancel another trip we had planned… I jokingly said "should I rent an RV?", they actually agreed!!!!! That was beyond ridiculous and ultimately I was promised that the coach would be finished and ready within the next 2 weeks.

Finally, on 6/26/20, Carlton called me to advise the coach could be picked up, but he also advised that the coach had been involved in an on-site collision by service center technicians and that it was still pending the floor boards/molding for the flooring.

The final parts needed to finish the floor would be expected to be delivered in the coming weeks and I could return to get that finished. So we picked up the coach that day and obtain written advice that Mike Thompson RV Service Center would hold responsibility of the repairs from the on-site collision.

-7-

4th of July weekend, we used the coach for a <250-mile holiday trip (our 2nd trip in the coach since purchased) and were appalled at the condition of our coach. We found to have the same issues and even a few more problems with safety items that weren't even problems before. It felt like we were in the twilight zone and all this time and money had been wasted.

ALLLL that said; we ask ourselves how do we move forward??? Who do we need to talk with? inspect the coach with?

How do we get what we just paid for?!

Now that we are about to embark on another round of repairs at the service center, can we request a meeting at dropoff/check-in to inspect the coach in its current condition and especially the issues with the "repaired" flooring, with someone from service center management, Carlton (our person of contact during our previous repair stint) and the technician that installed the floor… to ensure no misunderstanding and to set a clear and reasonable expectations.

Thor stated during a call I made to them on 7/6, that since they've already paid for floor replacement… the responsibility for that now lies with Mike Thompson RV Service Center.

Items to review for 2nd visit repairs:

1.     Taillights, left turn signals not operational for Coach and Trailer (all fuses verified good per our inspection to attempt and resolve the problem while on the road).

2.     Windshield wipers malfunctioning with a mind of their own.

3.     Flooring still separating from sub-floor and raising up just as it was before, with obvious wrinkling clearly improperly installed around toilets and slide-outs.

4.     Floor vents left with loose or missing screws.

5.     Glue smeared on front of refrigerator and freezer door not closing properly due to hitting cabinet.

**6.      Cabinet by the entry (right side next to fire extinguisher) is wobbly (not sure how to explain, but the fire extinguisher was not in its place when we picked up the coach, it was found on the floor behind the couch, and when we put it back in its place, the cabinet siding seemed to flex inward- unstable or not secured somehow).**

**7.      Front Bath toilet spewing water out from under lid when closed during flush.**

**8.      Front driver's seat wiring is disconnected and laying on the floor, electric positioning functions inoperable.**

**9.      Collision damage caused by Mike Thompson Service Center technicians.**

**It seems crazy to us that we have put $30,000 cash into this "NEW" coach since purchased 4 months ago and it hasn't even been in our possession the majority of the time we've owned it! The repairs, customer service and overall experience with our coach has been truly disappointing and exhausting.**

**Our 3 month "repair" ride has been unacceptable and we refuse to be put thru that again or lose our coach for that amount of time again. The coach "as is" with all the aforementioned "issues" does not represent the $150,000 value that we purchased.**

**Who do we speak to about compensation for our time and expense along with the warranty time that has now been consumed by time spent at Service Center for basic functions that should have been fully operational and up to par at time of initial purchase delivery. After all repairs are completed we'll have wasted 6 months or more of our 1-year warranty and use due to the coach being at the service center…all while still making payments on a seemingly "lemon" coach. Not to mention, that once finished with Mike Thompson's center, the coach will still have to go to Freightliner for the repairs that Mike Thompson's refuses to address on a motorhome they just sold us.**

**It's as if we were misrepresented at time of showing and sale and received a USED coach with underlying problems, sold as NEW.**

**Unbelievable."**

-9-

17.     Since purchase, Plaintiffs have returned their PALAZZO to the Defendants and its authorized warranty service dealers for repairs on numerous occasions.  Despite this prolonged period during which Defendants were given the opportunity to repair the PALAZZO, the more significant and dangerous defects were not repaired.  Defendants failed to repair the subject vehicle so as to bring it into conformity with the warranties set forth herein.  From the date of its purchase, the PALAZZO, continues to this day to exhibit some or all of the non-conformities and/or defects described herein.

18.     The defects experienced by Plaintiffs with the PALAZZO substantially impaired its use, value and safety.

19.     Plaintiffs directly notified the Defendants of the defective conditions of the PALAZZO on numerous occasions.  Plaintiffs notified Defendants, THOR and MIKE THOMPSON RV SUPERSTORES, that they wanted a rescission of the sale of the PALAZZO but the Defendants have failed and refused to buy back Plaintiffs' defective PALAZZO.

## VI.     Causes of Action

**COUNT 1:  VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE SECTION 1790 ET SEQ.**

20.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

21.     The PALAZZO is a consumer good as defined under the Song-Beverly Consumer Warranty Act.

22.     Plaintiffs are"purchasers" of consumer goods as defined under the Song-Beverly Consumer Warranty Act.

23.     Defendant, THOR,  is a "manufacturer" and "distributor" as defined under the Song-Beverly Consumer Warranty Act.

24.     The sale of the vehicle to Plaintiffs was accompanied by an express written warranty.

25.     The serious non-conformities have manifested themselves within the applicable express warranty period. The non-conformities substantially impair the use, value and or safety of the vehicle and or can cause serious bodily injury or death.

26.     Plaintiffs brought their PALAZZO to MIKE THOMPSON RV SUPERSTORES, an authorized repair facility, for repairs on numerous occasions in attempts to have the existing express warranties satisfied.

27.     Defendants have not repaired the nonconformities after a reasonable number of attempts and, as such, have failed to comply with and have breached all applicable warranty requirements.

28.     Further, the sale of the PALAZZO to Plaintiffs was accompanied by implied warranties that the vehicle was merchantable and fit for a particular use.

29.     Defendants have breached the implied warranties of merchantability and fitness for a particular use because the vehicle when sold would not pass without objection in the trade.

30.     Despite their breach of the express and implied warranties, Defendants have refused Plaintiffs' demand for a refund or replacement.

31.     By failure of Defendants to remedy the defects as alleged above, or to issue a refund or replacement, Defendants are in breach of their obligations under the Song-Beverly Consumer Warranty Act.

32.     Defendants' continuing breach of their obligations as set forth herein is willful

-11-

pursuant to the Song-Beverly Consumer Warranty Act and as such, Defendants and each of them are liable to Plaintiff for civil penalties in an amount as set forth below.

33. Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:    VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

34. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

35. Plaintiffs are "consumers" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

36. Defendants, THOR and MIKE THOMPSON RV SUPERSTORES, are "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

37. The PALAZZO is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

38. The express warranties more fully described herein above pertaining to the PALAZZO, is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

39. The actions of the Defendants as herein above described, in failing to tender the PALAZZO to Plaintiffs free of defects and/or refusing to repair and/or replace the defective

PALAZZO tendered to Plaintiffs constitute a breach of the written and implied warranties covering the PALAZZO and hence a violation of the Magnuson-Moss Warranty Act.

40.     Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

41.     As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth herein above, Plaintiffs have been damaged herein above in an amount in excess of $350,000.00 according to proof at trial.

41.     Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 3: LENDER LIABILITY**

42.     Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

43.     Plaintiffs are indebted to HUNTINGTON NATIONAL BANK as a result of their purchase of the PALAZZO.  Plaintiffs are entitled to assert all claims and defenses stated above against HUNTINGTON NATIONAL BANK as a defense to the debt.

**COUNT 4:     BREACH OF EXPRESS WARRANTIES**

-13-

44.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

45.     Th Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs' PALAZZO or those similarly situated were free from inherent risk of failure or latent defects.  In addition, the Defendants issued an expressed written warranty which covered the PALAZZO and warranted that the PALAZZO, was free of defects in materials and work quality at the time of delivery.

46.     As alleged above, the Defendants breached its warranties by offering for sale and selling as safe to Plaintiffs a PALAZZO that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

47.     In breach of the foregoing warranties, the Defendants have failed to correct said defects.

48.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 5:     BREACH OF IMPLIED WARRANTIES**

49.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

50.     The Defendants impliedly warranted that Plaintiffs' PALAZZO which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

51.     Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants is unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the PALAZZO, had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiffs.

52.     Because of the defects, Plaintiffs' PALAZZO is unsafe and unfit for use and has caused economic loss to the Plaintiffs.  Therefore, the Defendants breached the implied warranty of merchantability.

53.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 6:     NEGLIGENCE AND NEGLIGENT MISREPRESENTATION**

54.     Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

55.     The Defendants had a duty to Plaintiffs to provide a product reasonably safe in design and manufacture, warn of dangerous defects, disclose adverse material facts when making representations of fact to Plaintiffs and correct products which are defective.

56.     The Defendants breached their duty of reasonably care and duty to disclose material adverse facts to Plaintiffs by the following acts and omissions:

       a.     Failure to design and manufacture a  PALAZZO  that did not harbor the defects alleged herein;

-15-

b.      Failure to notify Plaintiffs of the dangerous and defective condition of the PALAZZO when Defendants knew or should have known of the dangerous and defective condition;

c.      Failure to fulfill its duty to disclose the material adverse facts as set forth above and otherwise failing to exercise due care under the circumstances; and

d.      Failure to repair the PALAZZO  in accordance with the express and implied warranties.

57.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 7:     BREACH OF CONTRACT

58.     Plaintiffs re-allege and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

59.     Plaintiffs would show that the actions and/or omissions of Defendants described herein above constitute breach of the sales contract, which proximately caused the direct and consequential damages to Plaintiffs described herein below, and for which Plaintiffs hereby sues.

60.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 8:     NEGLIGENT REPAIR

61.     Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

62.     On numerous occasions, Plaintiffs delivered the PALAZZO to Defendants for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

63.     On each occasion that Plaintiffs returned the PALAZZO  for repairs, Plaintiffs are informed and believe, and thereupon allege, that Defendants attempted repairs of the PALAZZO pursuant to their obligations under the express and implied warranties. Defendants owed a duty of care to Plaintiffs to perform repairs on the PALAZZO  in a good and workmanlike manner within a reasonable time.  These Defendants breached this duty.

64.     Defendants' attempted repairs of Plaintiffs' PALAZZO were done so negligently, carelessly, and recklessly as to substantially impair the PALAZZO 's use, value, and safety in its operation and use.  At no repair attempt was Plaintiffs' PALAZZO  fully and completely repaired by Defendants, nor were many of the conditions of which Plaintiffs complained fixed or significantly improved by Defendants' attempts at repair.  Nonetheless, each time Plaintiffs picked up the vehicle after Defendants' repair attempts, Defendants represented to Plaintiffs that the repairs were complete, and Plaintiffs relied thereon.

65.     As a direct and proximate result of Defendants' negligent failure to repair the PALAZZO  within a reasonable time or within a reasonable number of attempts, Plaintiffs were forced to drive a defective and dangerous PALAZZO  in conducting their daily activities.  As a further direct and proximate result of Defendants' failure to repair the PALAZZO  in a timely and workmanlike fashion, Plaintiffs were forced repeatedly to take the PALAZZO  in for further repair attempts and to leave the PALAZZO  for long periods of time at great inconvenience to themselves, and Plaintiffs sustained actual damages.

66.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants'

actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; attorney fees and damages to Plaintiffs's health and well-being in the form of emotional distress.

## VII.    Economic and Actual Damages

67.    Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

a..    Out of pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

b.    Loss of use;

c.    Loss of the "benefit of the bargain";

d.    Diminished or reduced market value; and

e.    Costs of repairs.

## VIII.    Multiple Damages

68.    The Defendants' conduct in violation of the DTPA was committed knowingly, as that term is defined in that Defendants had actual awareness of the *falsity, deception, or unfairness* of such acts, practices, and/or omissions.

69.    Plaintiffs further shows that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

70.    Therefore, Plaintiffs are entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the

amount of their economic damages.

## IX.   Request for Rescission

71.     Plaintiffs seek the remedy of rescission of the sales contract which is requested in the following paragraph.

72.     Plaintiffs revoke their acceptance of the PALAZZO for the reason that its defects substantially impair its value to Plaintiffs and acceptance was based on Plaintiffs' reasonable reliance on the false representations and warranties of Defendants that the defects in PALAZZO would be repaired.  Accordingly, Plaintiffs seek a cancellation of the purchase transaction and an order of the court restoring to them the money obtained by Defendants as a result of the false representations and breaches of warranty set forth above.  Plaintiffs also seeks cancellation of the debt and now offers to return the PALAZZO to Defendants.

## X.   Attorney Fees and Costs

73.     Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XI.   Prayer

74.     For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

a.      For general, special and actual damages according to proof at trial;

-19-

b.  Rescinding the sale of the 2019 THOR PALAZZO bearing VIN 4UZACJFC2KCKX4400 and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

c.  For incidental and consequential damages according to proof at trial;

d.  Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

e.  Any diminution in value of the PALAZZO, attributable to the defects;

f.  Past and future economic losses;

g.  Prejudgment and post-judgment interest;

h.  Damages for loss of use of vehicle;

i.  Civil Penalties and/or Punitive damages;

j.  Damages for mental anguish;

k.  Attorney fees;

l.  Costs of suit, expert fees and litigation expenses; and

m  All other relief this Honorable Court deems appropriate.

**XII.    Demand for Jury Trial**

75.  Plaintiffs hereby demands a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*

Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdaltonlaw.com
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS